[Crim. No. 23556. Second Dist., Div. Five. Jan. 24, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
DENNIS GENE PINGREE, Defendant and Appellant.

## COUNSEL

Clifford Douglas, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Russell Iungerich and Gary Hynds, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—Defendant was charged by information with two counts of forgery. (Pen. Code, § 470.) He pleaded not guilty. Pursuant to stipulation, the cause was submitted on the preliminary hearing transcript. The court found defendant guilty of count I. Proceedings were suspended. Defendant was placed on three years' probation on various terms and conditions. He appeals from the judgment (order granting probation).

The evidence adduced at the preliminary hearing was as follows: People's Exhibits 1 and 2 were checks drawn on the account of William Lowry at the Independent Bank. Lowry had not signed People's Exhibit 1 or 2, nor had he given anyone else permission to sign them. He had been unaware that the checks were missing.

John Lopez was employed as the store director of Dale's Market in Northridge. Lopez cashed People's Exhibit 2 for $25 on September 6, 1972. He wrote a driver's license number on the check. He recalled no details about the transaction. Agnes Hamilton was a grocery clerk at Dale's Market. On September 6, 1972, she cashed People's Exhibit 1. The check was cashed in connection with the purchase of merchandise costing $1.87. Ms. Hamilton wrote down the driver's license number of the person who presented the check. She recalled nothing else about the transaction.

People's Exhibits 1 and 2 are both dated September 6, 1972, made out to cash, and signed "William D. Lowry." They are endorsed "Dennis G. Pingree." The driver's license number E 194172 appears on the face of each check.[1] Officer Wagener ran the license number through the Department of Motor Vehicles. He received back People's Exhibit 3, a driver's license and application in defendant's name.

It was stipulated that defendant had written his name a number of times on People's Exhibit 4. It was further stipulated that a handwriting expert had compared the writing on People's Exhibit 4 with the endorsements on People's Exhibits 1 and 2 and had determined that the same person wrote them all.

Defendant's sole contention on appeal is that the evidence is insufficient to sustain the conviction. The cause was first submitted on the transcript, January 23, 1973, the People reserving the right to produce additional testimony. Defendant waived his right to jury trial and to confront and cross-examine witnesses. Defense counsel stated that he did not believe the submission to be a "Mosley" situation,[2] that he planned to argue the matter. The prosecutor, "just to be safe," advised defendant that he might be incriminating himself by proceeding by way of the submission and defendant stated that he understood that. Following the submission a short recess was taken, after which defense counsel stated that he had explained to defendant that due to a "difficulty with the state of the transcript" the matter would have to be continued for several days.

Proceedings resumed January 29, 1973. The court stated that the matter had been put over for further evidence, but that a conference had been had between the court and opposing counsel, resulting in the following agreement: "THE COURT: . . . Insofar as the future of the trial is concerned, there will be no further evidence put on and that you will be found guilty of 470 of the Penal Code and I might add that as the evidence now stands, the Court would in the normal course of things, find guilty [*sic*] without any further evidence being put on. You will be found guilty. Whether or not it will remain a misdemeanor or a felony will up [*sic*] to the Court at the time of the probation and sentence proceedings.

"In any event, the Court will not send you to the State Prison at this time and that [*sic*] the worst thing that could happen to you at this time would be that you could spend time in the County Jail and up to one year with credit for time served.

---

[1] Pursuant to rule 12(a) of the California Rules of Court, we caused the exhibits to be lodged with this court.

[2] *In re Mosley*, 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473].

"I'm not saying that you would serve any additional time—

"MR. PINGREE: Yes, sir.

"THE COURT: You will be released on your own recognizance at this time pending the probation and sentencing proceedings.

"If the matter is made a misdemeanor, of course the maximum time you could spend for a violation of probation would be up to one year in the County Jail, with credit for time served.

"As a felony, if you were to violate, and we made it proceedings suspended, and you did violate that, of course you could go to the State Prison.

"Do you understand that?

"MR. PINGREE: Yes, sir.

"THE COURT: The State Prison term is one to fourteen years, for this particular offense.

"On the other hand, if we leave it open with proceedings suspended, you would have the right to earn a misdemeanor by satisfactorily serving a term of probation.

"Do you understand that?

"MR. PINGREE: Yes.

"THE COURT: This is the basis on which you wish to proceed at this time?

"MR. PINGREE: Yes, sir."

The prosecutor then advised the court that the People would be dismissing one of the two counts. The court said, "I assume that is part of the agreement." Defense counsel said that it was.

An additional waiver of the privilege against self-incrimination was then taken as follows:

"THE COURT: All right.

"Of course, you have the right, if you wish, to take the witness stand and at this time put on your own defense.

"Do you understand that?

"MR. PINGREE: Yes.

"THE COURT: And you will be, to the extent that you know you will be

found guilty of one count, you will be incriminating yourself to that extent by terminatin [*sic*] the trial at this point inasmuch as you would have the right to take the witness stand and I don't know how the ruling would be if you took the stand, to be frank with you.

"MR. PINGREE: Yes.

"THE COURT: So to that extent, do you waive and give up your right against self-incrimination?

"MR. PINGREE: Yes, sir."

■ Defendant asserts that the evidence is insufficient to show that he acted with intent to defraud. (See *People* v. *Swope,* 269 Cal.App.2d 140 [74 Cal.Rptr. 586].) He contends that *People* v. *Martin,* 9 Cal.3d 687 [108 Cal.Rptr. 809, 511 P.2d 1161], enables him to raise the issue now. Had the original submission of January 23d gone through unchanged, *Martin* would indeed be in point. The proceedings of January 29th, however, altered the situation from a simple submission on the transcript to a plea bargain whereby, as part of the bargain, the People agreed not to produce further evidence and defendant agreed that he would be found guilty of count I on the basis of the evidence already in file. A defendant who enters into such an agreement cannot challenge the sufficiency of the evidence on appeal. (*People* v. *Martin, supra,* 9 Cal.3d 687, 694-695; *People* v. *Sanchez,* 24 Cal. App.3d 664 [101 Cal.Rptr. 193].)

Disposition of count II was set over to the time of sentencing. Apparently through inadvertence no action was taken with respect thereto. In accordance with the plea bargain count II is ordered dismissed.

The judgment (order granting probation) is affirmed.

Ashby, J., and Hastings, J., concurred.